UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMY PENICK, PH.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:25-cv-00713-SPM |
| vs. | ) | |
| | ) | |
| MERS/MISSOURI GOODWILL | ) | |
| INDUSTRIES, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF DR. JULIANNE FRAIN

Defendant MERS/Missouri Goodwill Industries ("Goodwill"), by and through its counsel, hereby submits its Response in Opposition to Plaintiff's Motion to Exclude the Expert Report and Testimony of Dr. Julianne Frain.

### INTRODUCTION

Goodwill disclosed Dr. Julianne Frain as its expert in support of the affirmative defense that Plaintiff failed to mitigate her lost wage damages after Goodwill terminated her employment for unprofessional conduct. Dr. Frain is a vocational rehabilitation specialist who has opined regarding Plaintiff's work/earning history, efforts to obtain employment following her separation from Goodwill, and forecast of her earning capacity within the local market.

After reviewing 240 pages of case-related documents and Plaintiff's deposition testimony, conducting research as to relevant labor market statistics, and relying on her significant education and experience in the field of employment rehabilitation and consulting, Dr. Frain drafted a detailed, eleven-page written report (not including attachments thereto) describing the information reviewed, the pertinent facts, her research efforts, and her opinions. As set forth in her report, Dr.

Frain concludes that: (1) Plaintiff did not put forth reasonable diligence to obtain employment in the 16 months she was unemployed after Goodwill terminated her employment; and (2) Plaintiff failed to take advantage of job opportunities reasonably available to her after her employment with Goodwill ended.

Plaintiff did not depose Dr. Frain. Plaintiff has not identified a counter-expert. Instead, Plaintiff seeks to exclude Dr. Frain from testifying as Goodwill's expert witness at trial. Plaintiff contends that Dr. Frain's report and testimony should be excluded because: (a) Dr. Frain's opinions are unreliable and the methodology she applies is borrowed from inapplicable legal contexts and has no accepted foundation in her field; (b) Dr. Frain's opinions will not assist the trier of fact; and (c) Dr. Frain's report is unreliable because she failed to assess Plaintiff.

Plaintiff's arguments in support of excluding Dr. Frain as Goodwill's expert at trial are meritless. Indeed, to the extent Plaintiff's arguments have any relevance at all, the arguments go to the weight of the evidence, not to its admissibility. Therefore, the Court should deny Plaintiff's Motion to Exclude Dr. Frain's report and testimony. A copy of Dr. Frain's report is attached hereto as **Exhibit 1**.

<u>**DR. FRAIN'S EDUCATIONAL BACKGROUND AND EXPEREINCE**</u>

"A vocational rehabilitation counselor (VRC) helps people with disabilities, injuries, or chronic conditions return to work or find new employment. They assess client capabilities, create individualized employment plans, coordinate training and therapies, and work with employers to place clients in suitable roles." *See* <u>Vocational Rehabilitation Counselor: Career Guide</u> (<u>www.appliedbehavioranalysisedu.org/jobs-related-to-applied-behavior-analysis/what-is-a-vocational-rehabilitation-counselor/</u>). A vocational rehabilitationist often assesses an individual's barriers to employment opportunities and assists the individual's re-entry into the labor market.

*See* Master v. City of Independence, 998 F.3d 827, 838 (8th Cir. 2021) (describing a vocational rehabilitationist's duties).   VRCs function as part case manager, part counselor, and part career strategist.  *See* Vocational Rehabilitation Counselor: Career Guide.

Dr. Frain's education and experience with vocational rehabilitation counseling is extensive.[1]  Dr. Frain is a Certified Rehabilitation Counselor, Certified Life Care Planner, Certified Expert through the American Board of Vocational Experts, and a Certified Provider for the Department of Education's Division of Vocational Rehabilitation.

After obtaining both a Masters-of-Science Degree and Doctorate in Rehabilitation Counseling, Dr. Frain has dedicated herself exclusively to the study of, and consulting in, the field of vocational rehabilitation.  From 2008 to the present (18 years), Dr. Frain has been employed as a vocational rehabilitation specialist, has taught university level courses on vocational rehabilitation, and has published research articles and book chapters on the subject, has been a guest lecturer and presenter on vocational issues, and acted as President or President Elect of the International Association of Rehabilitation Professionals.

In addition to the experience described above, since 2010, Dr. Frain has owned and operated Rehab Pro Assessment and Consultation, a company specializing in vocational case management, vocational assessment, and life care planning. In that position, she regularly completes comprehensive vocational assessments to determine employability.  She has testified as an expert on vocational rehabilitation issues in cases pending in both state and federal courts more than three hundred-sixty (360) times.

Based on the foregoing, there is no question that Dr. Frain has the necessary credentials, knowledge, and experience to opine whether Plaintiff used reasonable diligence is seeking work

---

[1] For a full view of Dr. Frain's background, please see her CV which is attached to Plaintiff's Motion to Exclude as **Exhibit 2**.  Dr. Frain's list of testimony is attached to Plaintiff's Motion to Exclude as **Exhibit 3**.

3

to replace the loss of her employment at Goodwill, and the likely result if Plaintiff were to have used reasonable means to find new employment.

## LEGAL ARGUMENT

### A.  Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"A district court acts as a 'gatekeeper' when screening expert testimony for relevance and reliability." Anderson v. Hansen, 2023 U.S. Dist. LEXIS 71779 *4 (Mo. E.D. 2023). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying the conclusions is scientifically valid." Id. *4-5. "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." Id. *5 (*citing* Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006)).

"The Court in Daubert emphasized that the inquiry required by RFE 702 is intended to be flexible." Anderson v. Hansen, 2023 U.S. Dist. LEXIS 71779 *5. Furthermore, "the Eighth Circuit has held that expert testimony should be liberally admitted." Id. *5 (*citing* Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014) (doubts about the usefulness of expert testimony are resolved in favor of admissibility); *see also*, Master v. City of Independence, 998

4

F.3d 827, 838 (8th Cir. 2021); (noting that the Eighth Circuit has recognized that a vast multitude of "cases call for the liberal admission of expert testimony and courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility.") (internal quotation marks and citations omitted); Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (expert testimony should be admitted if it advances the trier of fact's understanding "to any degree"); Lauzon v. Senco Prods. Inc., 270 F.3d 681, 686 (8th Cir. 2001) (FRE 702 "clearly is one of admissibility rather than exclusion").

Finally, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Maki v. FRB of Minnesota, 784 F.Supp. 3d 1191, 1206 (D. Minn. 2025) (internal quotation marks omitted). "As long as the expert's testimony rests upon good grounds based on what is known, it should be tested by the adversary process with competing expert testimony and cross examination, rather than excluded at the outset. Exclusion of an expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." Anderson, 2023 U.S. Dist. LEXIS 71779 *6 (*citing* Wood v. Minnesota Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997)).

### B.      Responses to Plaintiff's Arguments

*1.      Dr. Frain's opinions are reliable and based on acceptable methodology and foundation in her field.*

First, Plaintiff argues that Dr. Frain's opinions are unreliable because the methodology she applies is borrowed from inapplicable legal contexts and has no accepted foundation in her field. Plaintiff, however, fails to identify the alleged acceptable methodology and foundation in the field of vocational rehabilitation for this circumstance. Plaintiff also fails to cite any caselaw or authority to support her argument that Dr. Frain's opinions are unreliable or that referencing legal

5

requirements in other contexts is unacceptable.

In reality, there is no single method of determining the reasonableness of a former employee's mitigation efforts that is mandated by state or federal law. Instead, the Eighth Circuit Manual of Model Civil Jury Instructions (2025) ("Model Jury Instructions") simply, and somewhat vaguely, defines a plaintiff's duty to "mitigate" damages as the obligation "to exercise reasonable diligence under the circumstances to minimize her damages." *See* Model Jury Instructions, 5-16 [5.70 Damages: Actual]. The Model Jury Instructions further provides that "if [jurors] find that the plaintiff failed to seek out or take advantage of an opportunity that was reasonably available to her, [jurors] must reduce her damages by the amount she reasonably could have avoided if she had sought out or taken advantage of such an opportunity." Id.

Plaintiff challenges the reliability of Dr. Frain's opinions for not being "derived from any accepted vocational rehabilitation standard, any peer-reviewed research, or any methodology designed for this type of case at hand." Plaintiff's Memorandum (Doc. 34), p. 5. Plaintiff's position is misguided and fails to recognize that Dr. Frain's opinions are derived from her significant education and real-world experience in the field of vocational rehabilitation. Indeed, Dr. Frain has both a Masters and Doctorate in Rehabilitation Counseling, and has been practicing in the field of vocational rehabilitation for more than eighteen (18) years. Moreover, Dr. Frain's opinions rely on her review of documents in the litigation file (as identified in her report) and her research into labor market statistics from U.S. Department of Labor's Bureau of Labor Statistics, along with data on teacher pay rates for the St. Louis region. *See* Expert Report (Exhibit 1), pp.12-19. Her opinions are also supported by her long-time "experience coaching individuals who are seeking to secure employment as soon as possible in a particular and/or desired industry and at a certain pay rate." *See* Expert Report (**Exhibit 1**), p. 10. Dr. Frain's substantial experience assisting

6

job seekers has shown her what actions usually result in prompt employment.

To the extent Dr. Frain makes reference in her report to Missouri's minimum eligibility threshold for unemployment insurance benefits and her personal experience with family court wage-imputation proceedings, Dr. Frain is not suggesting that these are "THE" legal standards for mitigating damages in employment discrimination cases; she is simply anchoring her opinions to other contexts with which she has experience, and/or witnessed or coached individual job seekers in their pursuit of employment.   An explanation of these situations would obviously be helpful to a jury in determining what constitutes a "reasonable" job search in this case.

In Maki v. FRB of Minnesota, the District Court rejected similar arguments as those made by Plaintiff in the instant motion.  *See generally*, Maki v. FRB of Minnesota, 784 F.Supp. 3d 1191 (D. Minn. 2025).  The vocational rehabilitation expert at issue in the Maki case had a B.S. in Psychology and a Master's in Rehabilitation Counseling.  She owned a rehabilitation counseling company and had twenty years of experience in the field. Id. at 1207. She had testified or been deposed as an expert on thirty-four (34) prior occasions.  In preparation for drafting her report, she reviewed and relied upon the complaint, plaintiff's discovery responses, employment history, pay and benefits documents, and employment documents (including job application documents, retirement plan documents, plaintiff's resumes), and the transcript and video clips of plaintiff's deposition.  Id. at 1207.  Based on her experience and review of the aforementioned records, the expert concluded that plaintiff did not make a reasonable effort to obtain subsequent employment. Id.

In Maki, plaintiff argued that defendant's expert's opinions should be excluded in their entirety as unreliable and irrelevant because the expert's analysis: (i) was too superficial and non-technical to assist the trier of fact; (ii) lacked sufficient factual basis; (iii) was not the product of

reliable principles or methodologies; and (iv) opined on legal matters. Id. at 1207-08.

The Court denied plaintiff's motion to exclude the expert's opinions after holding that: (i) the expert did not merely repeat written job descriptions or compare them as a layperson might, but analyzed deposition testimony in relation to plaintiff's work history in a way that "seems likely to be helpful" to a jury; (ii) the expert's alleged lack of factual basis for her opinions is an issue for cross examination, not a basis for exclusion of the testimony; (iii) the expert's methodology was adequate in that her proffered testimony drew on her vocational counseling experience and described tangible steps for pursuing employment; and (iv) the expert's opinions as to the reasonableness of plaintiff's job search was a fact question appropriate for a jury and was not objectionable just because it embraces an ultimate issue.  Id. at 1208-09.

When comparing Dr. Frain to the expert in Maki, Dr. Frain has an objectively greater degree of education, similar length of experience in the field, substantially more expert witness experience, reviewed similar case-related documentation, and conducted deeper and broader research and analysis regarding the facts of the case.  Accordingly, applying the standards of the Maki case, Dr. Frain's report and testimony should not be excluded from evidence.

In another instructive case, Cowden v. BNSF Ry. Co., the District Court denied a motion in limine seeking to bar expert testimony on lost wage damages based on alleged faulty methodology and assumptions because such issues should be addressed through cross examination.  See Cowden, 980 F.Supp.2d 1106, 1123-24 (E.D.Mo. 2013).

Plaintiff's challenge to the reliability of Dr. Frain's report and opinions falls short. Consequently, the Court should deny Plaintiff's Motion to Exclude Dr. Frain's Report and Testimony.

8

2.      *Dr. Frain's opinions will assist the trier of fact.*

Plaintiff first contends that Dr. Frain's opinions will not assist the trier of fact because they are tethered to "the wrong standard in the wrong context" (i.e., unemployment eligibility requirements and family court wage-imputation cases). Plaintiff's Memorandum (Doc. 34), p. 8. Plaintiff, however, fails to point to any alleged "right standard or context," or any caselaw supporting her position on this issue. While Plaintiff's arguments on this issue may be reasonable fodder for cross examination of Dr. Frain at trial, they are not a sufficient basis for excluding Dr. Frain's opinions.

Plaintiff next argues that Dr. Frain's opinions will not assist the trier of fact because her "opinions . . . do not offer anything beyond what is apparent from the record itself." Plaintiff's Memorandum (Doc. 34), p. 9. Plaintiff's position lacks merit. Indeed, Dr. Frain has done significant work collating and summarizing the evidence in the record which is germane to her opinions. After summarizing the relevant facts, she then ties the factual record to the results of her labor market research of pertinent labor market statistics and information, including describing plaintiff's "transferrable skills" and Dr. Frain's "occupational recommendations," which provides the jurors with an analysis of job categories within which Plaintiff should have been seeking employment.

Dr. Frain also conducts a "retroactive labor market survey" wherein she determined the growth rate and median salaries for job categories she was recommending for Plaintiff. Next, Dr. Frain's report provides data discovered in her research as to the actual number of jobs available in certain categories of relevant jobs within the St. louis market at the time that Plaintiff was searching for replacement employment. Finally, as previously discussed, Dr. Frain references her experience and knowledge regarding efforts typically made by individuals searching for employment in the

9

context of unemployment and family law cases to provide jurors a point of comparison when deciding whether Plaintiff's job search efforts were reasonable.

The data, information, and examples presented in Dr. Frain's report is certainly not within the knowledge and expertise of most laypeople.  While some of the data may be public, finding it, deciphering it, and understanding it takes specialized experience and knowledge.  It seems unquestionable, therefore, that Dr. Frain's testimony will be beneficial to jurors tasked with deciding if Plaintiff "exercise[d] reasonable diligence under the circumstances to minimize her damages" and "failed to seek out or take advantage of an opportunity that was reasonably available to her." *See* Model Jury Instructions, 5-16 [5.70 Damages: Actual].  Thus, Plaintiff's Motion to Exclude Dr. Frain's Report and Testimony should be denied.

      3.      *Dr. Frain's report (and opinions) are reliable without her having interviewed Plaintiff or having done an in-person assessment of Plaintiff.*

Plaintiff suggests that Dr. Frain's opinions are unreliable because she did not interview or independently assess Plaintiff.  While it is true that Dr. Frain did not directly interview Plaintiff or conduct a one-on-one, in-person assessment, Dr. Frain thoroughly assessed Plaintiff's vocational background.  Indeed, an interview or face-to-face assessment was unnecessary because Dr. Frain had plenty of documentation and testimony from which she could glean all the information needed to complete her assessment.  In other words, because Dr. Frain was able to complete an individualized assessment of Plaintiff through records and deposition testimony, she did not need an interview or in-person assessment.

Dr. Frain evaluated documents which provided her with Plaintiff's education, work history, job titles, job duties, skills, job search efforts, criminal/claim history, and personal background (including Plaintiff's alleged social anxiety diagnosis).  The documents Dr. Frain reviewed included Plaintiff's Petition, personnel file from her employment with Goodwill, payment history,

10

job applications, resumes, LinkedIn profile, Plaintiff's initial disclosures and interrogatory answers, and the entirety of Plaintiff's 399-page deposition transcript.  This information provided Dr. Frain with a full and complete understanding of Plaintiff from a vocational assessment perspective.

While Plaintiff complains about Dr. Frain not interviewing Plaintiff or conducting an in-person assessment, Plaintiff does not indicate what additional pertinent information Dr. Frain would have discovered through such an exercise.  And again, Plaintiff notably fails to cite any caselaw in support of her argument that a vocational expert's failure to interview a plaintiff or conduct an in-person assessment renders a vocational rehabilitation expert's opinions' unreliable.  This alleged deficiency is an issue for cross examination, not for exclusion.  Therefore, the Court should deny Plaintiff's Motion to Exclude Dr. Frain's Report and Testimony.

### CONCLUSION

Based on the foregoing, the Court should deny Plaintiff's Motion to Exclude the Expert Report and Testimony of Dr. Julianne Frain.

Respectfully submitted,

/s/ Adam D. Hirtz
Adam D. Hirtz, #48448MO
Harry L.  Benson, #70539MO
JACKSON LEWIS P.C.
1 N. Brentwood Blvd., Suite 1150
St. Louis, MO  63105
Telephone:  (314) 827-3939
Facsimile:  (314) 827-3940
adam.hirtz@jacksonlewis.com
harry.benson@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, a true and correct copy of the foregoing was electronically filed with the Court via the Court's CM/ECF system which will cause a notice of filing to be served upon the following counsel for Plaintiff:

Nicole Matlock
Meredith Berwick
Kennedy
Hunt, P.C.
4500 West Pine Blvd.
St. Louis, MO  63108
nmatlock@kennedyhuntlaw.com
meredith@kennedyhuntlaw.com

*Attorneys for Plaintiff*

/s/Adam D. Hirtz

12